### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**GLADYS JOSEPH,**
   *Plaintiff*

   *v.*

**DITECH FINANCIAL, LLC,**
   *Defendant*

**Civil Action File No:**

_____

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Plaintiff **GLADYS JOSEPH**, by and through undersigned counsel, and presents to this Honorable Court this **Complaint**, and in support thereof presents the following:

## PARTIES

1.   Plaintiff, Gladys Joseph, is a natural person who resides in Gwinnett County, Georgia.

2.   Plaintiff is allegedly obligated to pay a consumer debt and is, therefore, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

3.   Defendant, Ditech Financial, LLC, is a limited liability company formed under the laws of the State of Delaware and registered to do business in the State of Georgia. Defendant may be served with process via its Georgia

registered agent, CT Corporation System, at 289 S Culver St, Lawrenceville, GA, 30046-4805, in Gwinnett County.

4.     Defendant uses interstate commerce and/or mail in its business. Defendant also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party, and was engaged in such attempts in connection with the allegations of this case. Defendant is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq*., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

6.     This action is specifically filed to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, et seq., of Regulation X.

2

7.   Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

8.   This Court has original jurisdiction over Plaintiff's RESPA, TILA, Regulation X, and FDCPA claims pursuant to 28 U.S.C. § 1331.

9.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 on Plaintiff's state law claims.

10.   Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to the claims occurred in this district. Pursuant to LR 3.1B(3), N.D.Ga., venue is proper in the Atlanta Division because the conduct complained of herein occurred in Gwinnett County, which is in the Atlanta Division, and Defendant maintains its agents for service of process in Gwinnett County, which is in the Atlanta Division.

## ALLEGATIONS OF FACT

### *Ms. Joseph's Mortgage*

11.   On or about June 23, 2006, Ms. Joseph obtained a residential mortgage loan ("the Loan") from Bank of America, N.A.

12.   On September 1, 2013, servicing of the Loan was transferred to Defendant Ditech (then known as Green Tree Servicing LLC).

13.   Ms. Joseph was a party to an active Chapter 13 bankruptcy (Case No. 10-63660, Bankr. N.D.Ga.) at the time servicing of the Loan was transferred to Ditech.

14.   The Loan was in default at the time servicing of the Loan was transferred to Ditech.

15.   Ditech is the current servicer of the Loan.

16.   The Loan was a federally-related mortgage loan, and is subject to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605.

### *Defendant's Default Notice and Threatened Foreclosure*

17.   On February 9, 2017, Defendant sent Ms. Joseph a notice of default (the "February 9 Notice")

18.   The February 9 Notice alleged that the Loan was past due in the amount of $7,938.19, including four monthly payments totaling $5,785.24, a corporate advance balance of $45.00, and an escrow advance balance of $2,309.54.

19.   On February 23, 2018, Defendant, via its attorneys at the law firm of Aldridge Pite, LLP, sent Ms. Joseph a Notice of Pending Foreclosure Sale (the "Foreclosure Notice").

20.   The Foreclosure Notice informed Ms. Joseph that a Notice of Sale Under Power had been published in the legal newspaper for Gwinnett County, and that her home was set to be foreclosed upon and sold at the Gwinnett County Courthouse on April 3, 2018.

21.   On or around February 22, 2018, Defendant informed Ms. Joseph's counsel that Defendant's records showed her to be five months past due.

22.   Defendant demanded $7,531 to bring Ms. Joseph's account current.

23.   Ms. Joseph's counsel reviewed Defendant's life of loan history, and discovered that Ms. Joseph was, at most, three months past due, not five, and that Defendant had made a number of errors in servicing the Loan, including (but not limited to):

a. Failure to timely credit payments, in violation of 12 C.F.R. § 1026.36(c); and

b. False reporting of the account to credit bureaus, in violation of the Fair Credit Reporting Act and the FDCPA; and

c. Misapplication of funds.

24. In addition, after reviewing the life of loan history, Ms. Joseph's counsel concluded that it was likely that a forensic examination of the history would reveal additional violations.

25. Ms. Joseph's counsel contacted Defendant in an attempt to stop the pending foreclosure and resolve the matter.

### *April 3 Settlement*

26. On April 3, 2018, the parties settled the claims regarding the foreclosure and servicing of the mortgage (the "April 3 Settlement") and executed a Settlement Agreement to memorialize the deal (the "April 3 Settlement Agreement"). A copy of the executed April 3 Settlement Agreement has been attached hereto as Exhibit 1.

27. In the April 3 Settlement Agreement, Defendant agreed to bring the loan bring the account "current and due for the April 2018 payment":

> D. **Account Status as Current**.  The Parties agree that the
> account is currently past due in the amount of $8,715.73.
> Ditech agrees to accept the February 2018 payment and
> the March 2018 payment and mark both as received on
> the due date. Further, Ditech will bring the account
> current and due for the April 2018 payment. To the
> extent late fees or inspection fees have been assessed to
> the account, they will be waived. Borrower shall be
> responsible for making her May 2018 mortgage payment
> and all future payments due under the Loan.

28.    Ms. Joseph fully complied with her obligations under the April 3 Settlement.

29.    Ms. Joseph paid her mortgage in full and on time every month following the
April 3 Settlement.

30.    Ms. Joseph paid her April 2018 mortgage payment in full and on time.

31.    Ms. Joseph paid her May 2018 mortgage payment in full and on time.

32.    Ms. Joseph paid her June 2018 mortgage payment in full and on time.

33.    Ms. Joseph paid her July 2018 mortgage payment in full and on time.

34.    Ms. Joseph paid her August 2018 mortgage payment in full and on time.

35.    Ms. Joseph paid her September 2018 mortgage payment in full and on time.

36.    Ms. Joseph paid her October 2018 mortgage payment in full and on time.

37.    Ms. Joseph paid her November 2018 mortgage payment in full and on time.

***Defendant's Breach of April 3 Settlement***

38.  On August 1, 2018, in response to a Qualified Written Request from Ms. Joseph's counsel, Defendant sent Ms. Joseph's counsel an updated life of loan history for the Loan.

39.  Ms. Joseph's counsel obtained the life of loan history to confirm that Defendant had honored its obligations April 3 Settlement.

40.  Defendant failed to honor the terms of the April 3 Settlement in a number of material respects.

41.  By failing to honor its obligations, Defendant materially breached the April 3 Settlement Agreement.

***Improper Fees***

42.  In the April 3 Settlement, Defendant agreed to waive late fees or inspection fees assessed to her account.

43.  Despite this agreement, Ms. Joseph's life of loan history continued to include fees assessed before April 3, 2018.

44.  Specifically, Defendant charged, and maintained, the following fees:

   a.  $195 for a title report; assessed on March 15, 2018; incurred on February 6, 2018

8

    b. $135 for inspections, assessed between April 16, 2016, and February 5, 2018.

45.    Defendant also assessed a number of fees *after* the April 3 Settlement was executed which were incurred prior to the Settlement.

46.    Specifically, Defendant charged, and maintained, the following fees:

    a. $277 for publication of the foreclosure; assessed on June 27, 2018; incurred on March 21, 2018

    b. $44.30 for postage (8 charges of $5.42, 4 charges of $0.47); assessed on April 5, 2018; incurred between February 17, 2018 and February 26, 2018.

47.    Ms. Joseph's May 1, 2018 mortgage statement reported an "advance balance" of $374.30, which reflects the title report, inspection fees, and postage listed above (the foreclosure publication had not yet been assessed against Ms. Joseph's account).

48.    Ms. Joseph's August 1, 2018 mortgage statement reported an "advance balance" of $651.30, which reflects the previously reported "advance balance" of $374.30, plus an additional $277 for the foreclosure publication.

49.   In a September 12, 2018 response to a Qualified Written Request sent by Ms. Joseph, Defendant again confirmed that "the account has an outstanding corporate advance balance of $651.30" which resulted from "foreclosure costs and inspection fees" which, pursuant to the April 3 Settlement, should not have been charged.

50.   Ms. Joseph's December 1, 2018 billing statement reported an increased "advance balance" of $666.30.

51.   According to the terms of the April 3 Settlement, no such fees should have been assessed, and Ms. Joseph should have had an advance balance of $0.

52.   In total, Defendant sent at least eight billing statements to Ms. Joseph (May 2018 through December 2018) which demanded payment of an "advance balance" comprised entirely of unauthorized fees and charges.

### *Unjustified Inspections*

53.   Given that Ms. Joseph had made all of her mortgage payments in full and on time since the April 3 Settlement (which purportedly brought the Loan current), Defendant had no legitimate basis to inspect Ms. Joseph's property.

54.   Despite this fact, Defendant continued to inspect Ms. Joseph's property and to charge fees for those inspections to Ms. Joseph's loan.

55.  Defendant assessed inspection fees of $15 to Ms. Joseph's account for at least two inspections—on October 3, 2018 and November 15, 2018.

56.  At least one such inspection is known to Plaintiff to have been conducted on April 18, 2018, after the April 3 settlement had been completed.

### *Improper Escrow Balance*

57.  On June 7, 2018, Defendant sent Ms. Joseph an Annual Escrow Disclosure Statement (the "Escrow Disclosure").

58.  The Escrow Disclosure alleged that Ms. Joseph's account had an Escrow Shortage of $2,803.72, despite the fact that Defendant had agreed to "bring the account current" a mere two months earlier, and Ms. Joseph had paid her monthly mortgage payments on time, in full, every month since the settlement. A copy of the Escrow Disclosure has been attached hereto as Exhibit 2.

59.  The Escrow Disclosure revealed that a substantial portion of the alleged shortage resulted from Ms. Joseph being charged for hazard insurance twice in 2016—once in May (for $1,481.00) and again in September (for $1,018.97).

60. On October 2, 2018, in response to a Qualified Written Request, Defendant provided descriptions for the insurance payments that revealed that the two insurance payments were to two different insurance companies.

61. Ms. Joseph's 2014, 2015, and first 2016 payment were made to Allstate insurance.

62. Ms. Joseph's second 2016, 2017, and 2018 payments were made to Farmers Insurance.

63. Thus, it appears that Ms. Joseph was billed for force-placed hazard insurance twice due to Defendant's decision to change insurance carriers.

64. Through these two payments, Ms. Joseph was charged a total of $2,499.97 in hazard insurance in 2016, more than double what she paid in 2017 ($1,171.20) and more than $1,000 more than what she paid in 2015 ($1,481) or 2014 ($1,437).

65. The Escrow Disclosure also included a monthly accounting of her escrow balance which revealed that Defendant had never brought her escrow account current.

66. In fact, the Escrow Disclosure reports Ms. Joseph's escrow account as having had a negative balance of -$697.46 following her April 2018 payment.

67.  Ms. Joseph's May 1, 2018 billing statement likewise reflects a negative escrow balance of -$697.46.

68.  The Escrow Disclosure does not show Ms. Joseph's escrow account as ever having had a positive balance following the April 3 settlement until July 2018, after several months of Ms. Joseph's mortgage payments were applied.

69.  The terms of the April 3 Settlement required Defendant to bring Ms. Joseph's escrow account "current" and cure any shortage.

70.  Over the course of the year, the balance of an escrow account fluctuates as monthly payments are deposited and tax and insurance obligations are paid from the account.

71.  Under the terms of Ms. Joseph's mortgage, Defendant requires that the balance of her escrow account remain above a minimum "cushion" amount of $477 at all times.

72.  Thus, at any given time, Ms. Joseph's escrow account is "current" if and only if it contains sufficient funds to ensure that it will maintain a constant balance greater than or equal to the $477 "cushion" amount over the course of the year, given the regular monthly escrow payments and the anticipated disbursements for taxes and insurance.

73.   To bring Ms. Joseph's escrow account current, as it agreed to do in the April 3 settlement, Defendant would have had to calculate the baseline amount which would keep her balance from fluctuating below the "cushion" amount, and adjust her escrow account to that balance.

74.   According to the Escrow Disclosure, from April 2016 through August 2018, Ms. Joseph's monthly escrow payment is $248.56, for a total incoming balance of $2,982.72 into her escrow account.

75.   The Escrow Disclosure estimates the account's total escrow obligation in 2018 to be $2,862—$1,690.80 in taxes and $1,171.20 in insurance.

76.   The Escrow Disclosure therefore calculated a monthly escrow payment of $238.50 ($2,862 divided by twelve months) going forward.

77.   Since Defendant failed to bring Ms. Joseph's escrow account current following the April 3 settlement, however, the calculated monthly payment of $238.50 would not have been sufficient to keep the account's balance above the "cushion."

78.   To the contrary, according to the Escrow Disclosure, Ms. Joseph's escrow account balance would have fallen far below the "cushion", reaching a low point of -$2,363.72 in September 2018.

79. The running balance of Ms. Joseph's account, as calculated by Defendant in the Escrow Disclosure, is as follows:

| Month | Balance | Payment | Taxes | Insurance |
|-------|---------|---------|-------|-----------|
| 04/2018 | -$697.46 | $248.56 | | |
| 05/2018 | -$448.90 | $248.56 | | |
| 06/2018 | -$200.34 | $248.56 | | |
| 07/2018 | $48.22 | $248.56 | | |
| 08/2018 | $296.78 | $238.50 | -$1,690.80 | -$1,171.20 |
| 09/2018 | -$2,326.72 | $238.50 | | |
| 10/2018 | -$2,088.22 | $238.50 | | |
| 11/2018 | -$1,849.72 | $238.50 | | |
| 12/2018 | -$1,611.22 | $238.50 | | |
| 01/2019 | -$1,372.72 | $238.50 | | |
| 02/2019 | -$1,134.22 | $238.50 | | |
| 03/2019 | -$895.72 | $238.50 | | |
| 04/2019 | -$657.22 | $238.50 | | |
| 05/2019 | -$418.72 | $238.50 | | |
| 06/2019 | -$180.22 | $238.50 | | |
| 07/2019 | $58.28 | $238.50 | | |
| 08/2019 | $296.78 | $238.50 | | |

**Escrow account as actually adjusted by Defendant**

80. Had Defendant brought Ms. Joseph's escrow account current following the April 3 settlement, as it had agreed to do, her running escrow balance would not have dipped below the $477 "cushion" amount.

81. Defendant clearly failed to bring Ms. Joseph's escrow account current.

82. In order to honor the April 3 settlement and bring Ms. Joseph's escrow account current, Defendant would have had to bring her escrow account to a positive balance of $2,106.26 following the settlement rather than a negative balance of $697.46.

83. Had Defendant honored the April 3 Settlement, the running balance for her escrow account would have been as follows, and would never have dipped below the $477 "cushion":

| Month | Balance | Payment | Taxes | Insurance |
|-------|---------|---------|-------|-----------|
| 04/2018 | $2,106.26 | $248.56 | | |
| 05/2018 | $2,354.82 | $248.56 | | |
| 06/2018 | $2,603.38 | $248.56 | | |
| 07/2018 | $2,851.94 | $248.56 | | |
| 08/2018 | $3,100.50 | $238.50 | -$1,690.80 | -$1,171.20 |
| 09/2018 | $477.00 | $238.50 | | |
| 10/2018 | $715.50 | $238.50 | | |
| 11/2018 | $954.00 | $238.50 | | |
| 12/2018 | $1,192.50 | $238.50 | | |
| 01/2019 | $1,431.00 | $238.50 | | |
| 02/2019 | $1,669.50 | $238.50 | | |
| 03/2019 | $1,908.00 | $238.50 | | |
| 04/2019 | $2,146.50 | $238.50 | | |
| 05/2019 | $2,385.00 | $238.50 | | |
| 06/2019 | $2,623.50 | $238.50 | | |
| 07/2019 | $2,862.00 | $238.50 | | |
| 08/2019 | $3,100.50 | $238.50 | | |

Escrow account "made current" following April 3 Settlement

84. Since Defendant agreed to bring the account current in the April 3 Settlement, and Ms. Joseph's ongoing escrow payments are more than sufficient to pay the account's escrow obligations, there should have been no escrow shortage on the account.

85. As a result of Defendant's failure to honor the April 3 Settlement and bring Ms. Joseph's account current, however, Defendant claimed that her account had an escrow shortage of $2,803.72.

16

86. The purported shortage of $2,803.72 is not a shortage on Ms. Joseph's part, but on Defendant's—it is the precise difference between the amount it agreed to credit Ms. Joseph's escrow account under the April 3 Settlement and the amount it actually did credit her account.

87. To remedy the alleged shortage, the Escrow Disclosure demanded that Ms. Joseph pay the alleged shortage of $2,803.72 in full by August 25, 2018, or pay $233.64 per month for 12 months in addition to her regular mortgage payment.

88. Since Ms. Joseph, a widow on a fixed income, did not have the $2,803.72 demanded by Defendant, she was forced to pay the additional $233.64 per month.

89. The additional monthly expense constitutes an extreme hardship for Ms. Joseph.

90. Paying the additional $233.64 every month has forced Ms. Joseph to cut back on basic necessities, such as food, in order to prevent Defendant from taking her home.

91. Despite this extraordinary hardship, Ms. Joseph has paid the $233.64 demanded by Defendant every month until December 2018.

92.  In December 2018, Ms. Joseph was unable to afford both the unlawful monthly payment demanded by Ditech and the basic necessities of human survival; as a result, she sent only a partial payment.

### Notices of Error

93.  On October 17, 2018, Ms. Joseph sent two Notices of Error to Defendant pursuant to 12 C.F.R. § 1024.35(a).

94.  The first Notice of Error challenged the improper fees charged to Ms. Joseph's account (the "Improper Fees NOE"). A copy of the Improper Fees NOE has been attached hereto as Exhibit 3.

95.  The second Notice of Error challenged the improperly calculated escrow balance (the "Escrow NOE"). A copy of the Escrow NOE has been attached hereto as Exhibit 4.

96.  On November 19, 2018, Defendant sent a response to both the Improper Fees NOE and the Escrow NOE (the "NOE Response") to Ms. Joseph's counsel. A copy of the NOE Response has been attached hereto as Exhibit 5.

### Improper Fees

97.  The NOE Response claimed to have waived the corporate advance balance assessed to Ms. Joseph's account.

98.   However, the loan history attached to the NOE Response continued to reflect the $651.30 in advance charges which were the subject of the Improper Fees NOE, plus an additional $30 for the two inspection fees which were assessed on October 3, 3018 and November 15, 2018.

99.   Ms. Joseph subsequently obtained an additional copy of her life of loan history, in which the improper fees do appear to have been waived.

### *Improper Escrow Accounting*

100.  The NOE Response did not correct the improper escrow accounting which was the subject of the Escrow NOE.

101.  To the contrary—the NOE Response admits the error, only to fail to correct it.

102.  The NOE Response states that "the terms of [the April 3 Settlement] were applied to the account on April 25, 2018", but that "[a]lthough funds were credited to escrow, **the payments applied did not cure the existing deficiency within escrow**." [emphasis added]

103.  The NOE Response failed to explain how an account could possibly be made current if the applied payments which "did not cure the existing deficiency".

104.  The NOE Response goes on to admit that Defendant did not perform an escrow analysis (which would enable it to determine the proper escrow balance to "bring the account current") until after the April 3 settlement. ("Once the account was brought current by the application of reinstatement funds, an annual escrow analysis was completed on June 7, 2018.")

105.  In fact, the "annual" escrow analysis which Defendant conducted on June 7, 2018 was the *only* escrow analysis which Defendant has conducted since it took over servicing of the Loan in 2013.

106.  Defendant admitted as much in an August 10, 2018 response to a Qualified Written Request sent by Ms. Joseph. A copy of the response has been attached hereto as Exhibit 6.

107.  Thus, Defendant has admitted that:

    a.  It agreed to bring Ms. Joseph's account current in the April 3 Settlement, and

    b.  It failed to bring Ms. Joseph's account current, as it agreed to do in the April 3 Settlement, and

c.  it failed to conduct an escrow analysis prior to the implementation of the April 3 Settlement to determine the amount that would have been required to bring the account current, and

d.  in the five years it had serviced the loan, it had *never* conducted the mandatory annual escrow analysis, and

e.  despite its admitted failure to even attempt to bring the Loan current, refused to correct the error.

### *Incorrect Address*

108.   In the April 3 Settlement Agreement, Defendant agreed to send future notices a correspondence regarding the Loan to Ms. Joseph at her residence address:

> U.  **Future Correspondence.** During the Dispute, Ditech changed Customer's mailing address to that of her attorney and/or designated representative.  Upon the Effective Date of this Agreement, all future correspondence will be sent to the Customer's property address or the following approved mailing address:
>
> Gladys Joseph
> 1904 Ewing Estates
> Dacula, Georgia 30019

109.  Despite this agreement, Defendant continued to send such correspondence to Ms. Joseph at her counsel's address.

## DAMAGES

110. By failing to bring Ms. Joseph's escrow account current as it agreed to do, Defendant has wrongfully forced Ms. Joseph to pay $233.64 per month which she does not owe and cannot afford.

111. This monthly payment has placed an extraordinary strain on Ms. Joseph's already strained finances, forcing her to choose pay Defendant's extortionate fees rather than food and other basic human necessities out of fear of losing her home.

112. This intolerable situation has placed Ms. Joseph in a state of extreme physical and emotional distress.

113. Ms. Joseph has also endured additional out-of-pocket expenses relating to the wrongful charges and her efforts to correct them.

## COUNT ONE:
### VIOLATION OF 12 C.F.R. § 1024.35
### Failure To Properly Respond To Notices Of Error

114. Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

115. As described herein, Ms. Joseph sent a Notice of Error to Defendant pursuant to 12 C.F.R. § 1024.35(a) describing their failure to properly credit her escrow account (the "Escrow NOE").

116. Defendant received the Escrow NOE within a week of mailing the First NOE.

117. In its response, Defendant failed to comply with its duties under 12 C.F.R. § 1024.35(e) and correct the errors identified by the Plaintiff identified in the Escrow NOE.

118. The failure to reasonably investigate or correct the errors raised in the Escrow NOE resulted in continued imposition of over $200 per month in fees against the Plaintiff which she does not owe.

119. By failing to correct the errors, Defendant failed to comply with the express, explicit requirements of 12 C.F.R. 1024.35.

120. Further, in its response to the Escrow NOE, Defendant admitted that it had failed to bring Plaintiff's escrow account current, conceding that "the payments applied did not cure the existing deficiency within escrow."

121. Defendant has had multiple opportunities to address its repeated errors in servicing Plaintiff's mortgage and escrow account, including the negotiation between counsel which led to the April 3 settlement.

122. Defendant's actions constitute a pattern and practice of behavior in conscious disregard of Plaintiff's rights as shown herein.

123. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO:
### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e and 1692f

124. Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

125. The Loan is a debt owed to a third party which is serviced and collected by Defendant.

126. Ms. Joseph's mortgage was in default at the time Defendant took over servicing responsibilities for the Loan.

127. Defendant is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

128. Defendant has made multiple attempts, as described herein, to collect fees or purported escrow "shortages" from Ms. Joseph which she does not owe.

129.  Such attempts constitute "false, deceptive, or misleading representation or means in connection with the collection of [a] debt" in violation of 15 U.S.C. § 1692e.

130.  Such attempts constitute "the false representation of … the character, amount, or legal status of any debt", in violation of 15 U.S.C. § 1692e(2).

131.  Such attempts constitute "[t]he representation or implication that nonpayment of any debt will result in … the seizure, garnishment, attachment, or sale of any property or wages of any person" despite the fact that such seizure would be unlawful, in violation of 15 U.S.C. § 1692e(4).

132.  Such attempts constitute a "threat to take any action that cannot legally be taken", in violation of 15 U.S.C. § 1692e(5).

133.  Such attempts constitute "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" despite the fact that such collection is not "expressly authorized by the agreement creating the debt or permitted by law", , in violation of 15 U.S.C. § 1692f(1).

134.  Ms. Joseph suffered actual damages as a result of Defendant's violations of the FDCPA; she is therefore entitled to recover her actual damages under 15 U.S.C. § 1692k.

135.  Ms. Joseph is additionally entitled to up to $1,000 in statutory damages, and her reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

136.  Given the willful and egregious nature of Defendant's conduct, Ms. Joseph is entitled to receive the full $1,000 in statutory damages.

## COUNT THREE:
### MATERIAL BREACH OF CONTRACT

137.  Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

138.  As described herein, Defendant failed to perform its contractual obligations to Ms. Joseph under the April 3 Settlement.

139.  Defendant's failure to perform constitutes a material breach of the April 3 Settlement.

140.  Ms. Joseph is therefore entitled to recover any and all damages resulting from Defendant's breach.

## COUNT FOUR:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

141.  Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

142.  The April 3 Settlement itself  was the result of multiple failures on Defendant's part to properly service Defendant's mortgage, including a wrongful threat of foreclosure.

143.  These pre-settlement failures caused Plaintiff extreme and unwarranted emotional distress.

144.  Following the April 3 Settlement, Defendant was on notice of its prior misconduct with respect to Ms. Joseph's mortgage, and the emotional toll its dereliction of its duty had taken on her.

145.  Defendant subsequently failed to honor the April 3 Settlement.

146.  In the April 3 Settlement, Defendant agreed to credit improper corporate advance fees which it had charged to Ms. Joseph's mortgage.

147.  It failed to do so—instead, it added *additional* improper fees to Plaintiff's mortgage.

148.  Defendant did not remove the fees until Ms. Joseph's counsel sent an additional Notice of Error.

149.  Had Ms. Joseph's counsel not diligently reviewed Ms. Joseph's loan history following the April 3 Settlement, Defendant would never have removed the fees it improperly charged.

150.   Defendant's failure to remove the fees it had improperly charged caused Ms. Joseph extreme and unwarranted emotional distress.

151.   Defendant also failed to properly bring Ms. Joseph's escrow account current as it agreed to do.

152.   Instead, a mere two months after Ms. Joseph had been assured that her mortgage had been brought current, it sent her an Escrow Disclosure demanding payment for a purported shortage of $2,803.72.

153.   This unwarranted and extortionate demand was a body blow to Ms. Joseph's already fragile emotional state.

154.   Ms. Joseph believed that Defendant would honor their word in the April 3 Settlement that her mortgage was current and that she could put Defendant's previous misconduct regarding the servicing of her mortgage behind her.

155.   Ms. Joseph entered into the April 3 Settlement to secure piece of mind, and to be assured that, so long as she continued to make her mortgage payments in full, she could move forward with a clean slate.

156.   Ms. Joseph diligently made her mortgage and escrow payments in full following the April 3 Settlement.

157. Ms. Joseph's piece of mind came to an abrupt end two months later, when Defendant sent her a letter demanding an additional $2,803.72 to pay for a "shortage" on the mortgage which they had just "brought current."

158. Defendant has caused Ms. Joseph ongoing emotional distress by demanding that she pay $233.64 per month towards a manufactured "escrow shortage".

159. In order to make these extortionate payments to Defendant, Ms. Joseph has been forced to forego food and other basic necessities of human life.

160. Defendant's conduct toward Ms. Joseph was willful and intentional, causing Plaintiff severe emotional distress sufficient to rise to the level of tort.

161. Defendant's conduct was severe and outrageous.

162. Defendant suffered damages, as described herein, as a direct and proximate result of Defendant's tortious and intentional infliction of emotional distress.

## COUNT FIVE:
### CONVERSION

163. Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

164. On numerous occasions, Defendant has charged and/or collected charges and fees from Plaintiff to which it was not entitled.

165.   Despite numerous requests from Plaintiff, Defendant has failed to correct these unlawful and unauthorized charges.

166.   Defendant has also maintained a balance in Plaintiff's escrow account which is substantially lower than the balance to which she is entitled given the April 3 Settlement and the monthly escrow payments she has made.

167.   Defendant has used its false accounting of Plaintiff's escrow account to force Plaintiff to make additional monthly payments toward an escrow "shortage" that does not actually exist.

168.   Defendant has engaged in tortious conversion by taking and converting Plaintiff's loan and escrow payments and not properly applying them to Plaintiff's account.

169.   Defendant has engaged in tortious conversion by assessing fees to Plaintiff which are not authorized and which she does not owe.

170.   Defendant's tortious acts of conversion were willful.

171.   Defendant suffered damages, as described herein,  as a direct and proximate result of Defendant's tortious acts of conversion.

## COUNT SIX:
### ATTORNEY'S FEES AND EXPENSES DUE TO STUBBORN LITIGIOUSNESS
### O.C.G.A. § 13-6-11

172. Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

173. Defendant was notified of their failure to properly bring Ms. Joseph's escrow account current by the Escrow NOE, and were given an opportunity to correct their error.

174. Defendant adamantly refused to do so.

175. Defendant offered no reasonable explanation for its failure to properly bring Ms. Joseph's escrow account current; to the contrary, it admitted that it had not done so and still refused to correct the error.

176. Defendant has therefore left Ms. Joseph with no other option but to file this action.

177. In so doing, Defendant has "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense". O.C.G.A. § 13-6-11.

178. Ms. Joseph is therefore entitled to recover her expenses of litigation, including attorney's fees, pursuant to O.C.G.A. § 13-6-11.

# COUNT SEVEN:
## ATTORNEY'S FEES AND EXPENSES PURSUANT TO SETTLEMENT AGREEMENT

179.  Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

180.  The April 3 Settlement Agreement mandates that the prevailing party in a dispute arising from the Agreement be awarded its costs, including attorney's fees:

> R.  **Attorneys' Fees.**  Unless otherwise expressly set forth herein, each of the Parties shall bear its own attorney's fees, costs, and expenses in connection with the matters set forth in the Agreement, including, but not limited to, the Dispute and the negotiations and preparation of this Agreement.  However, if any Party institutes legal proceedings over the enforcement of this Agreement or any provision of it, the prevailing Party shall be entitled to recover from the losing Party its costs, including reasonable attorneys' fees, at both the trial and appellate levels.

181.  Should Plaintiff prevail in this action, she is entitled to her attorney's fees and costs pursuant to the Settlement Agreement.

## COUNT EIGHT:
### PUNITIVE DAMAGES
### O.C.G.A. § 51-12-5.1

182. Plaintiff hereby incorporates Paragraphs 1 through 111 herein as through stated in full.

183. Defendant's actions, as described herein, constitute "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.

184. Ms. Joseph is therefore entitled to recover punitive damages from Defendant pursuant to O.C.G.A. § 51-12-5.1.

## TRIAL BY JURY

185. Plaintiff is entitled to and hereby requests a trial by jury.

## PRAYER FOR RELIEF

186. WHEREFORE, Plaintiff prays that judgment be entered in her favor and against Defendant, for:

    a.  Plaintiff's actual damages; and

    b.  Statutory damages pursuant to 12 U.S.C. §2605(f)(2) for each and every violation discussed above; and

c.  Statutory damages pursuant to 15 U.S.C. § 1692k; and

d.  Punitive damages pursuant to O.C.G.A. § 51-12-5.1; and

e.  Reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1692k, 12 U.S.C. §2605(f)(3), O.C.G.A § 13-6-11, and the April 3 Settlement Agreement; and

f.  Such other and further relief as this Court may deem just and proper.

Respectfully submitted on this day, February 1, 2019.

**BERRY AND ASSOCIATES**

*/s/Adam J. Klein*

Adam Klein
Georgia Bar No. 425032
*aklein@mattberry.com*

Berry & Associates
2751 Buford Highway, Suite 600
Atlanta, Georgia 30324

OFFICE    (404) 235-3305
FAX        (678) 383-2598

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**GLADYS JOSEPH,**
    *Plaintiff*

      *v.*

**DITECH FINANCIAL, LLC,**
    ***Defendant***

Civil Action File No:

_____

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in compliance with Local Rule 7.1; it is set in 14-point Times New Roman type and otherwise complies with the Court's margin and formatting standards.

Respectfully submitted on this day, February 1, 2019.

*/s/Adam J. Klein*
_____

Adam Klein
Georgia Bar No. 425032
Attorney for Plaintiff

Berry & Associates
2751 Buford Highway, Suite 600
Atlanta, Georgia 30324

OFFICE    (404) 235-3305
FAX       (678) 383-2598

aklein@mattberry.com